IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 1:11cr42-MHT |
| LESTER HARRIS WARD | ) | (WO) |

OPINION AND ORDER

On April 10, 2014, defendant Lester Harris Ward
appeared before the court for a hearing to determine
whether his supervised release should be revoked. Over
the course of the hearing, Ward's behavior raised serious
doubts as to his competency to participate in the
proceedings, as well as whether he had the mental
capacity to violate knowingly the conditions of his
supervised release at the times of the alleged
violations. For the reasons discussed below, the court
will order the Attorney General to place Ward in a
suitable facility for psychiatric examination. The
examination should include independent evaluation of (1)
whether he is currently competent to participate in his

revocation proceedings; (2) whether he was able to appreciate the nature and quality or wrongfulness of his actions at the time of his alleged violations and in particular at the time of his alleged perjury; and (3), as a collateral matter, whether he has cancer or whether his reported history with the disease is a manifestation of mental disease or defect.

## I. FACTUAL BACKGROUND

### A.

Ward is a veteran of the Vietnam War, where he served in the United States Marine Corps.  Since that war, he has experienced Post-Traumatic Stress Disorder (PTSD), which leads him to hear voices and explosions from the war.  The PTSD may also have exacerbated a brain injury which he incurred at the age of 11, when he was hit by a car. Since he returned from Vietnam, he has been unable to maintain employment and has had a long, troubled

history of drug use, criminal activity, incarceration, and mental-health treatment.

Ward is currently on supervised release following a ten-year-and-five-month sentence for two bank robberies. He actually served nine years and eight months before his release, at which point he moved home to southeast Alabama.

## B.

Before the current April 10 revocation hearing, Ward was before the court in June 2013 on a revocation petition arising from domestic abuse of his girlfriend. The court revoked his supervised release and sentenced him to time-served and a new two-year term of supervised release. The court ordered, as conditions of his new term of supervised release, that he undergo mental-health and substance-abuse treatments at the Veterans Administration (VA) for one year and to refrain from

drinking alcohol. Ward's current revocation petition arises in part from these conditions.

The government initially sought revocation for four alleged violations. The first charge is that he consumed alcohol in violation of the supervision condition that he not use or possess alcohol. The VA staff found Ward to have consumed alcohol. He reportedly had bloodshot eyes and smelled of alcohol. In addition, at the time, he was acting extremely upset and stating that his nephew had just been shot; however, his nephew had actually been shot a year earlier. A blood test reportedly found his blood-alcohol level to be within a normal range.

The second charge is that he violated the condition of supervision that he complete the VA mental-health and substance-abuse treatments. After he drank alcohol, Ward allegedly drove his truck off the VA premises, against instructions of VA staff. Ward received an irregular discharge from the VA program.

4

The third charge is that Ward violated the mandatory condition of supervision that he follow the instructions of his probation officer.   After Ward left the VA program, he allegedly lied and obscured his location from his federal probation officer.   The officer instructed him to report to the local state probation office at 3:00 p.m. that day.   Ward contends that he reported to the office, but the receptionist told him that his state probation officer was out for the day; however, two federal probation officers were present that day at the office from 2:45 to 3:30 p.m., and they saw no sign of Ward.

The fourth charge is that Ward violated the mandatory condition of supervised release that he not commit another federal, state, or local crime.   The probation officer discovered that Ward was receiving a significantly higher monthly disability payment from the VA than he had reported on his financial affidavit. Furthermore, although he had more than $ 40,000 in

5

savings at the time that he filled out the affidavit, he stated that he had no savings at all.  If Ward did not believe his statements on the financial affidavit to be true at the time he made them, his statements were perjury. 18 U.S.C. § 1621(2).

C.

At the April 10 revocation hearing on these four alleged violations, Ward displayed conduct that raised serious questions about his competency.  First, he indicated that he wanted to plead guilty, but during the plea colloquy there were several indications that he did not understand the nature or significance of the proceedings or of a guilty plea.  He stated that he "slightly" understood and that his "thoughts go in and out on a whole lot of things I don't really understand." Ward also failed to answer clearly the court's questions during the colloquy, and the court had to interrupt him

several times to explain the nature of the question and
of his guilty plea.

Ward also seemed confused about the events which gave
rise to the charges.  As the court reviewed the first
three alleged violations, to which Ward had stated his
intent to plead guilty, he required frequent counseling
by his attorney about how to respond, and he offered
contradictory explanations for the violations.  In
particular, he insisted that he had reported to the state
probation office following his release from the VA,
despite his probation officer's representations that he
could not have been there.  He refused to concede, but
instead argued that he should have "taken more
initiative" and gone back to the state probation office
at some other point.  Generally, he seemed to be confused
about exactly what time he had gone to the office, if at
all.

Ward also expressed confusion about several personal
facts about his medical condition and treatment.  He

stated that he was not receiving his psychiatric medication while at the Montgomery city jail, where he was incarcerated pending the revocation hearing; however, a Deputy Marshal revealed that he was receiving his psychiatric medications, although not his pain medication. Ward further stated that he needed to be checked for whether his cancer had come out of remission, but neither his counsel, his probation officer, nor his niece (who was present at the revocation hearing) could recall any previous cancer diagnosis.

Finally, while inquiring into the nature of Ward's financial circumstances, the court asked whether he had any children. Ward stated that he had two children, an 18-year-old and a 21-year-old. Neither his probation officer, his counsel, nor his niece had any knowledge of any children of that age. Ward further stated that his 18-year-old lived with his mother in San Diego, California. At the time his initial Presentence Investigation Report was prepared back in 2000, Ward

reported having two children, of which the younger, 22-year-old, lived with his mother in San Diego, California. Obviously, this 22-year-old would not be 18 or 21 years old today.

Ward's statements and manner throughout the course of the hearing give rise to reasonable, and in fact substantial, cause to believe that he is suffering from a mental disease or defect that renders him unable to understand the nature and consequences of the revocation proceedings.


## II.  DISCUSSION

In a previous case, this court has found that it is appropriate to apply the system of competency proceedings developed in the Insanity Defense Reform Act of 1984, 18 U.S.C. §§ 4241-4246, to supervised-release revocation and modification proceedings. United States v. Avery, 328 F.Supp.2d 1269, 1271-72 (M.D. Ala. 2004) (Thompson, J.).[1]

_____

1.  In Avery, the court erroneously refers to
(continued...)

Under the Act, a court may order a hearing sua sponte "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(a).  In advance of the hearing, the court may order a defendant to be committed for a reasonable period to the custody of the Attorney General to be placed in a suitable facility for examination. §§ 4241(b); 4247(b).

As described in detail above, the court has reasonable cause to believe that Ward is suffering from a mental disease or defect that renders him incompetent

---

1.(...continued)
due-process rights under the Fourteenth Amendment in the context of a federal revocation hearing.  The due-process rights of a federal defendant are protected by the Fifth Amendment.  However, "the reaches of the [Due Process Clauses of the] Fourteenth and Fifth Amendments are coextensive." Walker v. R.J. Reynolds Tobacco Co., 734 F.3d 1278, 1287 (11th Cir. 2013) (quoting Rodriguez-Mora v. Baker, 792 F.2d 1524, 1526 (11th Cir. 1986)) (alterations in original).

to continue with the revocation proceeding.  The court
will therefore order a psychiatric evaluation of Ward, to
include commitment to a facility where he may be observed
for a reasonable period, not to exceed 30 days.  18
U.S.C. § 4247(b).

Ward's confusion at the revocation hearing also calls
into question his ability, at the time of the alleged
violations, to understand the nature and quality or the
alleged wrongfulness of his actions--the federal
definition of insanity.  18 U.S.C. § 17(a).  There is
currently some uncertainty about whether the insanity
defense is available in the context of a supervised-
release revocation.  See United States v. Mueller, 116
F.3d 1483 (7th Cir. 1997) (unpublished) (noting the
uncertainty and declining to reach the question); United
States v. Brown, 899 F.2d 189 (2d Cir. 1990) (finding
the insanity defense unavailable in a probation
revocation hearing, relying in part on the nature of
probation as an alternative to incarceration). This court

has previously described the questions surrounding the defense in this context as raising "difficult questions of statutory interpretation, constitutional mandate, and general prudence."  See United States v.  McNair, 588 F.Supp.2d 1288, 1293 (M.D. Ala.  2008) (Thompson, J.). In this case, the court does not need to reach this complex question.

A revocation hearing "typically involves two distinct components: (1) a retrospective factual question whether the [defendant] has violated a condition of [supervised release]; and (2) a discretionary determination by the sentencing authority whether violation of a condition warrants revocation." Black v.  Romano, 471 U.S. 606, 611 (1985) (discussing probation revocation).  At the hearing, the government dismissed two of the charged violations leaving the court to adjudicate two remaining alleged violations: violation of the condition not to use alcohol and violation of the condition to complete the VA treatment program.  However, as stated at the revocation

hearing, if the court finds that Ward did not comply with these two conditions, the court may still also consider the underlying alleged conduct in the two dismissed charges in determining whether Ward's supervised release should be revoked or modified.   In other words, if Ward is found guilty of the two remaining charges, the court in the exercise of its discretion to determine the appropriate consequences for the two violations can consider the conduct underlying all four charges, including the two dismissed charges.   The court, therefore, needs to understand the nature of Ward's conduct surrounding all four charged violations.[2]  Such an

_____

2.   In <u>McNair</u>, this court noted that the insanity defense must be taken into account if the defendant is alleged to have violated his supervised release by committing a crime.   588 F.Supp.2d at 1293.   If the defendant was insane or under duress, he did not commit the crime, and therefore did not violate the condition of supervised release.   Since the court already dismissed the violation that was grounded in Ward's alleged perjury, such considerations will not be relevant to the first stage of the revocation determination--whether Ward violated the conditions of supervised release.   However, as described above, knowledge of the nature of Ward's culpability for uncharged conduct is still relevant.

13

understanding includes the nature of Ward's mental state
(1) on the evening that he drank alcohol and was kicked
out of the VA programs, (2) on the afternoon that he was
supposed to report to the state probation office, and (3)
on the day that he filled out his financial affidavit.
In particular, the court was troubled by reports that
Ward was confused about his nephew's shooting on the
night he was kicked out of the VA programs.  Since the
Insanity Defense Reform Act provides for examination of
a defendant who may have an insanity defense, the court
will order such an examination of Ward, along with his
competency evaluation.  18 U.S.C. § 4242(a).

Finally, Ward represented at his hearing that he had
previously been diagnosed with cancer and he asked for
testing to determine whether the cancer had come out of
remission.    However,   these   representations   are
questionable in light of his potential incompetency.
While Ward is at the medical facility to determine his
mental state, the facility should determine whether Ward

14

has previously had cancer and whether he currently has cancer, and if not, whether his representations of having cancer are related to his potential mental incompetency.

* * *

Accordingly, it is ORDERED as follows:

(1) Pursuant to the provisions of 18 U.S.C. §§ 4241 and 4247(b) & (c), the United States Marshal for this district shall immediately remove defendant Lester Harris Ward to the custody of the warden of an appropriate institution as may be designated by the Attorney General, where he is to be committed for the purpose of being observed, examined, and treated for a period not to exceed 30 days by one or more qualified psychiatrists or psychologists at the institution.   The 30-day period shall be counted from the day defendant Ward's arrives at the designated institution.

(2) Pursuant to 18 U.S.C. § 4247(c), the examining psychiatrists or psychologists conducting the mental examination of defendant Ward shall report in writing to

this court within 45 days from the date of defendant Ward's arrival at the institution as to their findings, opinions, and conclusions relative to the competency or incompetency of defendant Ward.  They shall specifically report to and advise this court as to the following issues:

(a) whether in their opinion defendant Ward may lack the mental competency to understand the proceedings against him or properly assist in his own defense;

(b) whether in their opinion defendant Ward may have lacked the mental capacity to commit the four violations alleged in the revocation petition; and

(c) whether defendant Ward currently has cancer or has in the past had some form of cancer, and whether his reported cancer is either a symptom or cause of his possible mental disease or defect.

It is further ORDERED that the clerk of the court is to arrange for a transcription of the revocation hearing held on April 10, 2014, and for that transcript to be

16

furnished to the Bureau of Prisons so that it may be considered by the psychiatrists or psychologists conducting the mental examination of defendant Ward.

DONE, this the 16th day of April, 2014.

       /s/ Myron H. Thompson     
    UNITED STATES DISTRICT JUDGE